# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| LYNN H. THORNBURG, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:99 CV 290 |
| ) | |
| v. ) | |
| ) | |
| BRANCH BANKING & TRUST ) | PLAINTIFF'S MOTIONS TO |
| COMPANY and STEVEN NADOLNY, ) | TO QUASH SUBPOENAS AND FOR |
| ) | PROTECTIVE ORDER |
| Defendants. ) | (Incorporated Memorandum) |
| ) | |

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Plaintiff, Lynn Thornburg, hereby objects to the subpoenas issued to Gaston Family Docs and Gaston/Lincoln Area Mental Health Center by Defendant Steven Nadolny ("Nadolny") and moves the Court to quash said subpoenas. Plaintiff further moves the Court to enter a protective order preventing either Nadolny or Branch Banking & Trust Company ("BB&T") from issuing additional subpoenas to Plaintiff's medical doctors and/or therapists and requests the Court tax the costs related to this motion against Defendant Nadolny. The grounds for these Motions are as follows:

## FACTUAL AND PROCEDURAL HISTORY

1. Plaintiff was employed by Defendant BB&T for twenty-four years. She advanced from her initial position as a teller to her final position as a client services representative. She was fired by BB&T on July 8, 1997.

2. During the latter part of her employment with BB&T, Plaintiff worked in the same bank branch as Defendant Nadolny. During the time they worked in the same branch, Nadolny subjected Plaintiff to continuous, noxious, and unwanted verbal and physical sexual

harassment. Despite Plaintiff's complaints regarding Nadolny's lewd and inappropriate behavior, not only did BB&T fail to discipline Nadolny or to otherwise rectify the situation, BB&T fired Plaintiff. Nadolny, on the other hand, was promoted.

3. Plaintiff filed a Complaint in the Mecklenburg County Superior Court on June 10, 1999 related to the above actions by BB&T and Nadolny. Plaintiff seeks recovery of monetary damages, actual and punitive, for violations of Title VII of the United States Code and the laws of the State of North Carolina related to sexual harassment, age discrimination and wrongful discharge. In addition to Plaintiff's claims related to the above-described behaviors of BB&T and Nadolny, Plaintiff has a claim against BB&T related to age discrimination.

4. BB&T filed its Answer on July 9, 1999. Nadolny filed his Answer July 14, 1999.

5. Defendants jointly filed a Notice of Removal on July 9, 1999. The United States District Court entered a Pretrial Order and Case Management Plan on October 5, 1999. Discovery is to be concluded no later than June 1, 2000.

6. BB&T issued its first request for production of documents and first set of interrogatories to Plaintiff on September 24, 1999. Plaintiff served her responses to the requests for production on November 3, 1999 and her responses to the interrogatories on November 15, 1999.

7. In responding to BB&T's requests for production, Plaintiff made an objection to each of the requests to the extent they required disclosure of privileged documents and to the extent they required disclosure of information beyond the scope of the issues involved in the lawsuit. BB&T included in its requests for production a request for

> [E]ach and every document available to you or in your possession in any way concerning any physician's or health care provider's examination, treatment or

diagnosis of you for any medical condition during or after your employment with BB&T and for five (5) years prior to your employment with BB&T.

(Request for Production No. 5). Plaintiff objected to the specific request, stating that it was overbroad and unduly burdensome (a response would have covered approximately thirty years of medical records due to the length of Plaintiff's employment with BB&T). Plaintiff further objected on the grounds that the information sought was not likely to lead to the discovery of admissible evidence and was annoying and harassing to Plaintiff.

8. In responding to BB&T's interrogatories, Plaintiff objected to each interrogatory to the extent that the information requested was privileged or beyond the scope of the issues involved in the lawsuit. BB&T included in its interrogatories a request that Plaintiff

> [I]dentify each and every physician, doctor, psychiatrist, psychologist, and other health care provider from whom you have sought professional care, treatment, counseling or advice of any kind whatsoever concerning mental distress or any physical effect of mental distress prior to, during or after your employment with BB&T.

Plaintiff responded that she had consulted a physician at Gaston/Lincoln Mental Health and a physician at Gaston Family Docs.

9. On December 8, 1999, counsel for Nadolny issued subpoenas to Gaston/Lincoln Area Mental Health Center and to Gaston Family Docs commanding each to produce "all medical records" of Plaintiff on December 20, 1999. The enclosure letter sent with each subpoena stated to the health care provider that

> Ms. Thornburg has filed a lawsuit against her former employer, BB&T, and against a BB&T employee, Steven Nadolny, and has placed her physical, mental and emotional status at issue. Any privilege that she would otherwise have has been waived.

> Although the subpoena directs that you produce the records at my office at a specific date and time, you can avoid the inconvenience of actually producing the

records by mailing them to me, along with the certification that the records are a true copy of your office's records.

10. By letter of December 10, 1999, counsel for Plaintiff advised opposing counsel that he was going to be in a trial in South Carolina through late December and requested that the document production related to the above subpoenas be delayed until the first of the new year. In a letter of the same date, counsel for Plaintiff notified the two health care providers that Plaintiff considered the documents to be privileged and asked that they not respond to the request.

11. Counsel for Nadolny agreed to postpone the document production until January, 2000. By letter of December 13, 1999, he advised the health care providers that the production had been rescheduled to January 10, 2000.

12. Prior to the scheduled date for production and prior to counsel for the parties attempting to resolve the issues by consent, Gaston Family Docs produced Plaintiff's medical records to counsel for Nadolny.

## LEGAL ARGUMENT

The subpoenas issued by Nadolny to Gaston Family Docs and to Gaston/Lincoln Area Mental Health Center request privileged information to which Defendants are not entitled. N.C. GEN. STAT. § 8-53 provides that:

> No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records under G.S. 132.1. *Confidential information contained in medical records shall be furnished only on the authorization of the patient*, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin.

(emphasis added). "Medical records" are defined by N.C. GEN. STAT. § 90-410 as "personal information that relates to an individual's physical or mental condition, medical history, or medical treatment, excluding X rays and fetal monitor records."

Not only are communications between physicians and their patients privileged in North Carolina, N.C. GEN. STAT. 8-53.3 provides specifically that communications between a psychologist and patient are privileged.

> No person, duly authorized as a licensed psychologist or licensed psychological associate, nor any of his or her employees or associates, shall be required to disclose any information which he or she may have acquired in the practice of psychology and which information was necessary to enable him or her to practice psychology.

N.C. GEN. STAT. 8-53.8 provides patients of counselors identical rights to privacy as those of psychologists.

Plaintiff consulted the physicians at Gaston Family Docs and Gaston/Lincoln Area Mental Health Center in their role as physicians and the information contained in their records was necessary for Plaintiff's treatment. The medical records kept by these health care providers therefore fall within the privilege outlined in the above statutes.

Although the causes of action alleged in Plaintiff's complaint involve both state and federal law, it is North Carolina's laws regarding patient privilege that should be applied.

> At the outset it should be noted that the North Carolina law of privileges is not decisive because the present claim arises under federal law. See F.R.Ev. 501. Nevertheless, several courts have recognized that a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.

*Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978) (internal citations omitted). The *Flora* court then employed a balancing test of the various public (fair administration of justice) and

private interests (the necessity of consulting physicians and encouraging full disclosure to them) involved in making its determination of whether or not to compel production of the medical records. *Id.* at 579. Other federal courts have followed the same procedure, applying the North Carolina laws regarding patient-physician privilege where applicable. *See Reserve Life Ins. Co. v. Davis Hospital, Inc.*, 36 F.R.D. 434 (W.D.N.C. 1965) and *Cahill v. HCA Management Co., Inc.* 854 F.2d 1316 (4th Cir. 1988) (unpublished decision).

The court in *Flora* analyzed the psychiatrist-patient privilege and found that the statute as written favored non-disclosure. *Flora*, 81 F.R.D. at 578. The court further found that it was "significant" that the physician-patient privilege statutes contained provisos giving the trial judge the power to compel disclosure of the confidential records, but that "North Carolina courts have stated that the proviso is intended to refer to exceptional, rather than ordinary, situations." *Id.* at 578-9.

In applying the North Carolina statutes regarding patient-physician privilege, state courts have found that the "underlying purpose of the privilege is to encourage free communication and disclosure between patient and physician in order to facilitate the proper diagnosis and treatment of the patient's ailment." *Jones v. Asheville Radiological Group, P.A.*, 129 N.C.App. 449, 500 S.E.2d 740, 745 (1998). *See also McGinnis v. McGinnis*, 66 N.C.App. 676, 311 S.E.2d 669 (1984).

The privilege extends not only to information "orally communicated by the patient, but to knowledge obtained by the physician or surgeon through his own observation or examination while attending the patient in a professional capacity, and which was necessary to enable him to prescribe. *McGinnis*, 66 N.C.App. at 676, 311 S.E.2d at 670 (*citing Smith v. Lumber Co.*, 147 N.C. 62, 64, 60 S.E. 717, 718 (1908)).

It is possible for a patient to waive his or her privilege. The privilege may be waived where (a) a patient calls the physician as a witness and examines him regarding the patient's condition; (b) a patient fails to object when the opposing party causes the physician to testify; (c) a patient testifies to communications between himself and the physician; or (d) the patient details the nature of his injuries and testifies to what the physician did or said. *Cates v. Wilson*, 321 N.C. 1, 15, 361 S.E.2d 734, 742 (1987).

Plaintiff has not directly or indirectly waived the patient-physician privilege in this matter. She has not called a physician to testify. She is, through the current motion, objecting to the disclosure of the confidential information requested by counsel for Nadolny. She has, in the past, objected to requests for similar information by BB&T. She has not testified as to communications between herself and any physician, and she has not detailed injuries and testified to what her physicians did or said.

Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure provides that "On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies . . ." The Court should, therefore, quash the subpoenas issued by Nadolny and enter a protective order requiring his counsel to destroy the records wrongfully produced by Gaston Family Docs prior to Plaintiff's current motion, prohibiting the use of any information obtained by their review, and prohibiting both BB&T and Nadolny from issuing similar subpoenas in the future.

Upon review of the statement set forth in Nadolny's enclosure letter to the health care providers, Plaintiff anticipates that Defendants will argue that Plaintiff "has placed her physical, mental and emotional status at issue" and will argue that "[a]ny privilege she would otherwise have has been waived." As shown in the test outlined above, this is in error. Furthermore, it is

likely that such a statement to Plaintiff's health care providers caused them to believe that Plaintiff had indeed waived her privilege in some way, lulling them into the mistaken belief that they need not have objected to the subpoenas. Counsel for Nadolny did not follow the correct procedure for obtaining such privileged information and should not benefit from these improper disclosures.

Ultimately, the disclosure or non-disclosure of Plaintiff's medical records lies within the discretion of the trial judge. *See* N.C. GEN. STAT. §§ 8-53, 8-53.3 and 8-53.8 ("Provided, that the presiding judge of a superior or district court may compel such disclosure, if in the court's opinion the same is necessary to a proper administration of justice and such disclosure is not prohibited by other statute or regulation."). Should the Court find that Defendants may be entitled to review Plaintiff's medical records, Plaintiff requests the Court first review the records *in camera*. As shown above, Plaintiff's medical records should be afforded a protected status.

"As our Supreme Court has recognized, even when a plaintiff waives the privilege, defendants must still utilize the formal discovery methods provided by the North Carolina Rules of Civil Procedure . . ." *Jones v. Asheville Radiological Group, P.A.*, 129 N.C.App. 449, 500 S.E.2d 740, 746 (1998). The records requested by (and already produced to) Nadolny include routine gynecological checkups and other personal information that could not conceivably be relevant to the instant action. Plaintiff requests the Court review the records and, if it finds that Defendants should be allowed access to certain records for purposes of discovery, allow Defendants access only to those records relevant to this litigation. Plaintiff further requests that any records turned over to Defendants be filed with the Court only under seal, pending further determination by the Court regarding the records' admissibility.

**WHEREFORE,** Plaintiff prays this Court quash the subpoenas issued by Nadolny to Gaston Family Docs and to and Gaston/Lincoln Area Mental Health Center; enter a protective order requiring the records already produced to be destroyed; prohibit Defendants from using, referring to, or otherwise utilizing the information already obtained from the records; and prohibit Defendants from issuing further subpoenas to any other health care provider consulted by Plaintiff. In the alternative, Plaintiff prays the Court review Plaintiff's medical records *in camera*, produce to Defendants only those documents the Court finds relevant to the instant action, and require the records only be filed with the Court under seal pending further rulings by the Court regarding the admissibility of said records in further Court proceedings. Plaintiff further requests the Court tax the costs related to this motion against Defendant Nadolny

This 5 day of January, 2000.

JAMES, McELROY & DIEHL, P.A.

By: _____
William K. Diehl, Jr.
(N.C. Bar No. 1187)
Jennifer A. Youngs
(N.C. Bar No. 23925)
600 South College Street
Charlotte, NC 28202
Telephone: 704/372-9870
*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Plaintiff's Motions to Quash and for Protective Order** has this date been served upon the parties by depositing a copy of the same in the United States Mail, sufficient postage prepaid, addressed to counsel as follows:

Edward Katze
Constangy, Brooks & Smith, LLC
Suite 2400
230 Peachtree Street, N.W.
Atlanta, Georgia 30303-1557

W. Randolph Loftis
Constangy, Brooks & Smith, LLC
101 South Stratford Road, Suite 300
Winston-Salem, North Carolina 27104-4224

Mr. Louis L. Lesesne, Jr.
Lesesne & Connette
1001 Elizabeth Avenue, Suite 1D
Charlotte, NC 28204-2234

This 5 day of January, 2000.

JAMES, McELROY & DIEHL, P.A.

By: _____
William K. Diehl, Jr.
(N.C. Bar No. 1187)
Jennifer A. Youngs
(N.C. Bar No. 23925)
600 South College Street
Charlotte, NC 28202
Telephone: 704/372-9870
*Attorneys for Plaintiff*